**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CORP. AUCTION RATE SECURITIES (ARS) MARKETING LITIGATION, | No. 09-MD-2014 JSW |
| This document applies to:<br><br>*American Housing Foundation, et al. v. Banc of America Securities, LLC, et al.*, 10-1943-JSW | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |

Now before the Court is the motion to remand filed by plaintiff American Housing Foundation ("AHF"), and six limited liability companies wholly-owned by AHF: Plaintiffs AHF Arizona, LLC, AHF Florida, LLC, AHF Tulsa, LLC, DHEOP, LLC, THEOP, LLC and WHEOP, LLC (collectively, "Plaintiffs"). Pursuant to Local Rule 7-1(b), the Court finds these matters suitable for resolution without oral argument, and the hearing set for September 10, 2010, is hereby VACATED. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, the Court hereby GRANTS Plaintiffs' motion to remand.

**BACKGROUND**

This case is another in a series of cases arising out of the failure of the Auction Rate Securities ("ARS") market. Plaintiff AHF is a charitable organization that provides affordable housing for low and moderate income families. (Docket No 1 (Notice of Removal, Ex. C (Plaintiffs' Original Petition ¶ 21)).) The remaining six plaintiffs in this action are limited liability companies wholly-owned by AHF (collectively, the "LLCs"). (*Id*.) The LLCs

1  acquired, on AHF's behalf, eighteen multifamily housing properties throughout four states for a
2  total price of approximately $210,000,000.  (*Id.*¶ 34.)

3        Plaintiffs allege that Defendant Banc of America Securities, LLC ("BAS"), acting as
4  AHF's financial advisor, devised a complex financing structure ("Financings") involving a
5  derivative debt financing model which included, inter alia, ARS so that AHF could purchase the
6  properties.  (*Id.* ¶ 21.)  AHF had no prior experience with derivative financing or ARS.  (*Id.* ¶
7  22.)  In contrast, BAS, along with its affiliates, Defendants Bank of America, N.A. ("BANA")
8  and Bank of America Corporation ("BAC") were "among the largest providers and advisors of
9  such complex financing structures in the United States."  (*Id.*)

10        Plaintiffs allege that from February 2003 to early December 2003, AHF trusted and
11  relied on BAS, BANA, and BAC to advise AHF on the Financings.  (*Id.* ¶ 23.)  Plaintiffs further
12  allege that in March 2003, BAS, acting through its employees Sondra E. Teilborg ("Teilborg"),
13  Tanya McCorquodale ("McCorquodale") and others, provided a proposed financing schedule
14  ("Financing Plan") to AHF.  (*Id.* ¶ 43.)  From March 2003 until the Financings closed in
15  December 2003, BAS, "act[ed] variously through Teilborg, McCorquodale, [and others] . . .
16  [and] maintained a fiduciary relationship with AHF."  (*Id.* ¶ 44.)

17        Plaintiffs allege BAS "took advantage" of its "superior knowledge" of derivative
18  financing and ARS and failed to disclose risks associated with the Financings.  (*Id.* ¶ 24.)  For
19  example, Plaintiffs allege that BAS falsely led AHF to believe that the ARS markets were safe
20  and liquid.  (*Id.*)  Furthermore, Plaintiffs allege that BAS falsely represented that it would
21  provide "ad hoc liquidity" for the ARS with the intent to fraudulently induce Plaintiffs to accept
22  BAS' recommendations for the Financings.  (*Id.* ¶¶ 24-25.)  BAS "well knew, or should have
23  known, that it could not or would not do so."  (*Id.*)

24        Plaintiffs further allege that BAS, through Teilborg and McCorquodale, made materially
25  misleading misrepresentations and omissions, and provided misleading materials, such as the
26  March 2003 Financing Plan, to induce Plaintiffs to accept BAS' proposed financing structure.
27  (*Id.* ¶¶ 43-44, 47.)
28

2

In October 2007, the ARS market failed. (*Id.* ¶ 54.) Plaintiffs allege that this caused a dramatic increase in the monthly variable interest rates that the six LLCs were required to pay to their bondholders. (*Id.*) AHF has supplied its own funds to enable the LLCs to continue to make these payments, which has resulted in an estimated $7.5 million or more in damages. (*Id.* ¶¶ 54-55.) Plaintiffs estimate further damages resulting from swap termination fees to Defendant BANA and potential foreclosure and loss of equity, for a total amount in damages of tens of millions of dollars. (*Id.* ¶ 55.)

Based upon these allegations and others, on October 22, 2009, in the 95th Judicial District Court of Dallas County, Texas, Plaintiffs filed their Original Petition in which they assert a claim of fraud against all Defendants and a claim of negligent misrepresentation against BAS, Teilborg, and McCorquodale. On November 24, 2009, Defendants filed their Notice of Removal to federal court, citing diversity jurisdiction as the basis for removal, despite the fact that both Teilborg and McCorquodale are Texas residents and non-diverse from AHF, a Texas 501(c)(3) non-profit corporation. On April 5, 2010, this case was transferred to this Court by the Judicial Panel on Multidistrict Litigation. Plaintiffs now move to remand this matter to the 95th Judicial District Court.

## ANALYSIS

**A.     Legal Standard.**

While diversity jurisdiction under 28 U.S.C. § 1332 ordinarily requires complete diversity of the parties, removal is proper despite the presence of a non-diverse defendant when that defendant was fraudulently joined, in other words, where that defendant is merely a "sham" defendant. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In this circuit, if a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987). A fraudulently joined non-diverse defendant will not defeat jurisdiction. *Id.* The party asserting the fraudulent joinder bears the burden of proof and remand must be granted unless the defendant can show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant.

3

*See Levine v. Allmerica Fin. Life Ins. & Annuity Co.*, 41 F. Supp. 2d 1077, 1078 (C.D. Cal. 1999). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotations omitted). "Courts should resolve doubts as to removability in favor of remanding the case to state court." *Id.*

**B.    Plaintiffs' Motion to Remand is Granted.**

Defendants argue that Plaintiffs improperly joined Teilborg and McCorquodale for the sole purpose of destroying complete diversity. Specifically, Defendants argue that Plaintiffs fail to allege any reasonable factual or legal basis for a Texas state law claim against Teilborg or McCorquodale, individually. Plaintiffs argue that the alleged facts do support a reasonable possibility of valid Texas state law fraud and negligent representation claims against Teilborg and McCorquodale, and thus remand is proper.

Defendants first oppose Plaintiffs' motion on the grounds that Plaintiffs' Original Petition "fails to provide anything close to a 'reasonable basis' for predicting that Plaintiffs could establish liability as to Ms. Teilborg and Ms. McCorquodale on Plaintiffs' fraud and fraudulent inducement claims." (Defendants' Resp. to Plaintiffs' Mot. to Remand at 9.) Under Texas state law, the elements for common law fraud are: (1) a material representation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party; and (6) causing injury. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (citing *Wilson v. Jones*, 45 S.W.2d 572, 574 (Tex. Comm'n App. 1932)).

Defendants argue that "other than the bare allegation that Ms. Teilborg and Ms. McCorquodale are each 'an individual, former employee of BAS and a resident of Dallas, Texas . . . [t]here is . . . no allegation showing that Ms. Teilborg or Ms. McCorquodale knowingly or recklessly made a material false statement with the intent to induce reliance . . ." (Defendants' Resp. to Plaintiffs' Mot. to Remand at 9.)

4

Plaintiffs allege that BAS, acting through Teilborg and McCorquodale, falsely indicated that BAS could and would provide liquidity for ARS in its attempt to close the Financings with Plaintiffs. (Plaintiffs' Original Pet. ¶ 59.) Plaintiffs further allege that this material representation was false because BAS "knew, or should have known, that it could not and would not do so." (*Id.*) According to Plaintiffs, Teilborg and McCorquodale, on behalf of BAS, provided the March 2003 Financing Plan to further induce Plaintiffs to close on the Financings with BAS.

Defendants have failed to meet their heavy burden in demonstrating that it is obvious under settled state law that Plaintiffs cannot possibly prevail on their fraud claim against Teilborg and McCorquodale, and thus have not demonstrated that this Court has subject-matter jurisdiction. Moreover, Defendants have not demonstrated that, under Texas law, Plaintiffs would not be afforded leave to amend their petition to cure any purported deficiency. *See Nickelberry v. Daimler Chrysler Corp.*, 2006 WL 997391, *1-2 (N.D. Cal. April 17, 2006) (remanding action where defendant failed to demonstrate that the plaintiff would not be given leave to amend to cure the pleading deficiency regarding the alleged sham defendants). In considering all factual allegations in the light most favorable to Plaintiffs, it is reasonable that a Texas state court could find that Plaintiffs could state a claim for relief against Teilborg and McCorquodale, in their individual capacities, for fraud or fraudulent inducement. Accordingly, the Court grants Plaintiffs' motion to remand.

Additionally, Defendants argue that Plaintiffs' claim for negligent misrepresentation against Teilborg and McCorquodale fails for two reasons. (Defendants' Resp. to Plaintiffs' Mot. to Remand at 10-12.) First, Defendants argue that Plaintiffs "do not plead negligent misrepresentation against Ms. Teilborg or Ms. McCorquodale." (*Id.* at 11.) Defendants argue that Plaintiffs do not mention Teilborg's and McCorquodale's names in the actual pleadings for the negligent representation claim, and that the allegations are "insufficient to support a reasonable basis for Plaintiffs to prevail against Ms. Teilborg or Ms. McCorquodale on the negligent misrepresentation cause of action." (*Id.* at 12.)

1  Under Texas state law, negligent misrepresentation consists of five elements: "(1) [a]
2 misrepresentation is made by a defendant in the course of his or her business . . . (2) the
3 defendant supplies false information for the guidance of others in their business; (3) the
4 defendant [does] not exercise reasonable care or competence in obtaining or communicating the
5 information; (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation;
6 and (5) the defendant's negligent misrepresentation proximately caused the plaintiff's injury."
7 *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

8  Here, in considering all factual allegations in the light most favorable to Plaintiffs, it is
9 reasonably possible that Plaintiffs could state a claim against Teilborg and McCorquodale, in
10 their individual capacities, for negligent misrepresentation. Plaintiffs allege that Teilborg and
11 McCorquodale were former employees of BAS (Plaintiffs' Original Pet. ¶¶ 4-5.) Plaintiffs
12 further allege that Teilborg and McCorquodale supplied the March 2003 Financing Plan to
13 Plaintiffs. (*Id.* ¶ 43.) Plaintiffs allege this Financing Plan did not disclose the material risks
14 associated with ARS. (*Id.* ¶ 51.) Plaintiffs allege the materials in this Financing Plan were used
15 to guide Plaintiffs to accept BAS' Financing Plan and recommended financial structures. (*Id.* ¶
16 59.) A Texas state court could find that Teilborg and McCorquodale did not exercise
17 reasonable care in supplying this false information, on behalf of BAS. Plaintiffs allege they
18 relied on Teilborg and McCorquodale's misrepresentations when they closed on the Financings
19 in December 2003, and suffered pecuniary loss after October 2007. Teilborg and
20 McCorquodale's actions and representations to Plaintiffs could have proximately caused
21 Plaintiffs' pecuniary injury.

22  Second, Defendants argue that employees generally are not personally liable for
23 negligent acts in the scope of employment. Defendants rely on *Morrow v. Wyeth*, 2005 WL
24 2621555, *4 (S.D. Tex. Oct. 13, 2005), to argue that "Texas law generally imposes liability on
25 corporations, not on individual employees or officers of those corporations." However, in
26 *Morrow* the plaintiffs sought to recover against the individual defendants on a products liability
27 claim, rather than fraud based claims. *Id.* at *5. The *Morrow* court found that individual
28 defendants did not owe any independent duty of care to the plaintiffs and were thus improperly

6

joined in the products liability cause of action. *Id*. at *6. In contrast, Plaintiffs here are claiming fraud and negligent misrepresentation against Teilborg and McCorquodale. *Morrow* does not apply here.

Under Texas state law, "a corporate agent can be held *individually* liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation." *Kingston v. Helm*, 82 S.W.3d 755, 758 (Tex. Ct. App. 2002) (emphasis added) (reversing trial court's directed verdict against plaintiff and holding that individual defendant could be subject to personal liability when he personally made false representations regarding town home to induce sale to plaintiff). Following *Kingston*, a Texas state court could possibly find Teilborg and McCorquodale individually liable for fraudulent statements or knowing misrepresentations, even if made in the scope of their employment with BAS.

**C.   Plaintiffs' Request for Attorneys' Fees.**

To determine whether to award costs and fees, this Court has a "great deal of discretion." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Although it was not ultimately persuaded by Defendants' arguments for subject-matter jurisdiction in this Court, the Court does not find that Defendants' removal was frivolous or motivated by bad faith. The Court therefore declines to exercise its discretion to award Plaintiffs fees and costs.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' motion to remand and DENIES Plaintiffs' request for costs and fees. The Clerk shall REMAND this matter to the 95th Judicial District Court of Dallas County, Texas, forthwith for all further proceedings.

**IT IS SO ORDERED.**

Dated: August 13, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

7